WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RED EQUIPMENT PTE LTD., a Singapore private limited company,<br><br>  Plaintiff/counterdefendant,<br><br>  vs.<br><br>BSE TECH, LLC, a Delaware limited liability company; and BOSTON SEMI-EQUIPMENT, LLC, a Delaware limited liability company,<br><br>  Defendants/counterclaimants.<br>_____<br>BSE TECH, LLC, a Delaware limited liability company; and BOSTON SEMI-EQUIPMENT, LLC, a Delware limited liability company,<br><br>  Third-party plaintiffs,<br><br>  vs.<br><br>LONE STAR LITHOGRAPHY, LLC, a Texas limited liability company, and OBIE ROOKER,<br><br>  Third-party defendants.<br>_____ | No. 2:13-cv-1003-HRH<br><br><br>O R D E R<br><br>Motion to Dismiss |

Counterdefendant moves[1] to dismiss Counts III and IV of the counterclaim. This motion is opposed.[2] Oral argument was requested but is not deemed necessary.

---

[1] Docket No. 26.

[2] Docket No. 27.

Background

Plaintiff/counterdefendant is Red Equipment Pte Ltd. Defendants/counterclaimants are BSE Tech, LLC and Boston Semi-Equipment, LLC (referred to herein collectively as "BSE").

Red Equipment "is in the business of ... deinstalling certain used semiconductor equipment" and selling "shipping kits for certain used semiconductor equipment."[3] BSE is in the business of selling and leasing "used and refurbished semiconductor equipment ('tools') in the United States and abroad."[4]

BSE alleges that "[i]n or about January 2013," BSE and Red Equipment "entered into an agreement through purchase orders and statements of work whereby [Red Equipment] was responsible for de-installing certain of the tools manufactured by Nikon ..., and for providing and affixing specialized shipping kits for the Nikon Tools ... in preparation for their extraction from" a fabrication plant in Japan "and subsequent shipping to customers...."[5] BSE

---

[3]Complaint and Demand for Jury Trial at 2, ¶ 8, Docket No. 1. BSE contends that because this is a Rule 12(b)(6) motion to dismiss some of its counterclaims, the court can only consider its First Amended Answer, Counterclaim, and Third Party Complaint and cannot consider other pleadings, filings, or submissions in the record. This contention is incorrect. The court can consider other pleadings in this case when deciding the instant motion to dismiss and any other filings or submissions it has considered would fall within one of the exceptions to the rule that the court cannot "'consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" United States v. Corinthian Colleges, 655 F.3d 984, 998-99 (9th Cir. 2011) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)).

[4]First Amended Answer, Counterclaim, and Third-Party Complaint of Boston Semi Equipment, LLC and BSE Tech, LLC at 22, ¶ 12, Docket No. 25.

[5]Id. at 23, ¶ 16.

alleges that some of the tools were shipped to California, where upon arrival, it was discovered that some of them "had sustained substantial damage."[6] BSE alleges that they "are evaluating, and have been evaluating, the scope of such damage."[7] BSE further alleges that as part of the evaluation, some of the Nikon Tools that were still in Japan were de-crated and inspected and "a number of deficiencies" were uncovered.[8]

Red Equipment contends that it is not responsible for any damage to the Nikon Tools and on May 14, 2013, Red Equipment commenced this action, in which it asserts a breach of contract claim against BSE, claiming that BSE owes it $463,804.50 for the work that Red Equipment performed under the parties' agreement.[9] BSE has counterclaimed, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, gross negligence, and negligence against Red Equipment.[10] BSE's gross negligence and negligence claims are based on allegations that Red Equipment "had a duty ... to abide by the promises, contracts, statements, and the standard of care in the tool de-installation and

---

[6]Id. at 24, ¶ 20.

[7]Id.

[8]Id. at ¶ 23.

[9]Complaint and Demand for Jury Trial at 17, ¶ 145, Docket No. 1.

[10]BSE also asserts gross negligence and negligence claims against Obie Rooker and Lone Star Lithography. Rooker is alleged to be "the Director of Operations" for Red Equipment and Lone Star is alleged to be "an entity owned and/or operated by" Rooker. First Amended Answer, Counterclaim and Third-party Complaint of Boston Semi Equipment, LLC and BSE Tech, LLC at 21, ¶¶ 7-8, Docket No. 25.

shipping kit industry, in [its] dealings with [BSE], and in the business dealings and obligations between and among the parties."[11] BSE alleges that as a result of Red Equipment's gross negligence and negligence, BSE has suffered "general, special, and consequential damages, including, but not limited to loss of revenues, profits, benefits, business opportunities and reputation, and other damages, injuries, and losses, to their detriment."[12] In its prayer for relief, BSE requests its "actual losses sustained ... as a result of" Red Equipment's "breaches and tortious conduct", "the losses suffered ... as a result of the lost economic opportunity caused by" Red Equipment's "violations of law", declaratory relief, and injunctive relief.[13]

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, Red Equipment now moves to dismiss BSE's gross negligence and negligence claims, arguing that these claims are barred by the economic loss doctrine.

## Discussion

"Rule 12(b)(6) authorizes courts to dismiss a complaint for 'failure to state a claim upon which relief can be granted.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Fed. R. Civ. P. 12(b)(6)). "To avoid dismissal, the complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a

---

[11]First Amended Answer, Counterclaim and Third-party Complaint of Boston Semi Equipment, LLC and BSE Tech, LLC at 27-28, ¶¶ 40 & 46, Docket No. 25.

[12]Id. at 28-29, ¶¶ 44 & 50.

[13]Id. at 29-30.

cause of action will not do.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] plaintiff must 'allege sufficient factual matter ... to state a claim to relief that is plausible on its face.'" OSU Student Alliance v. Ray, 699 F.3d 1053, 1061 (9th Cir. 2012) (quoting Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 721 (9th Cir. 2011)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012).

"The 'economic loss doctrine' bars plaintiffs, in certain circumstances, from recovering economic damages in tort." Flagstaff Affordable Housing Ltd. Partnership v. Design Alliance, Inc., 223 P.3d 664, 665 (Ariz. 2010). This doctrine "refer[s] to a common law rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." Id. at 667. "'Economic loss,' ... refers to pecuniary or commercial damage, including any decreased value or repair costs for a product or property that is itself the subject of a contract between the plaintiff and defendant, and consequential damages such as lost profits." Id.

Red Equipment argues that BSE's tort claims are barred by the economic loss doctrine and relies on Cook v. Orkin Exterminating Co., 258 P.3d 149 (Ariz. Ct. App. 2011), in support. There, Orkin treated the Cooks' homes for termites numerous times over a period of approximately twenty years pursuant to a contract between Orkin and the insurer of the construction company that built the Cooks' home. Id. at 150-51. The Cooks claimed that each

time Orkin treated their home, Orkin "promised the treatment would be effective...." Id. at 151. The Cooks finally brought suit against Orkin "alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of warranty, breach of fiduciary duty, negligence, negligent and intentional misrepresentation, and fraud." Id. The Cooks' negligence claim was based on "Orkin's [alleged] failure to properly treat their home for termites" and their misrepresentation and fraud claims were based on allegations that Orkin "misled them regarding its ability to rid their home of termites and promised that it would repair any damage to their home and furnishings resulting from new termite activity, thereby inducing them to enter the Agreement, which they otherwise would not have done." Id. at 152. The trial court held that the Cooks' tort claims were barred by the economic loss rule. Id. at 151. The court of appeals agreed, explaining:

> We consider the relevant contract and tort law policies and determine the ELR applies in this case and limits the Cooks' claims to those in contract. As in Flagstaff II, the contract law policy of upholding the parties' expectations favor[s] limiting the Cooks' claims to those in contract and, where there has been no injury besides that to the subject property, there is no strong policy reason to impose tort liability. Accordingly, we apply the ELR and hold that the Cooks are limited to their contractual remedies for purely economic loss from Orkin's alleged failure to adequately perform its promises under the Agreement. Because the Cooks are seeking remedies for purely economic loss from Orkin's alleged failure to adequately perform its promises under the Agreement, the ELR bars their tort claims.

Id. at 153 (internal citations and footnotes omitted).

BSE first argues that the economic loss doctrine does not apply here because this is not a construction defect or products liability case. The Arizona Supreme Court has only applied the economic loss doctrine in products liability and construction defect cases. See Flagstaff Affordable Housing, 223 P.3d at 665 ("This Court has previously applied the [economic loss] doctrine only to products liability claims. Today we apply the doctrine in a construction defect case and hold that a property owner is limited to its contractual remedies when an architect's negligent design causes economic loss but no physical injury to persons or other property."); see also, Evans v. Singer, 518 F. Supp. 2d 1134, 1142 (D. Ariz. 2007) (" It appears that no reported Arizona state appellate court decision has ever applied, or even discussed, the economic loss rule outside of the areas of products liability or construction defects.").

BSE argues that Cook is not to the contrary. Although Red Equipment contends that Cook involved a services contract, BSE contends that it was a construction defect case because the reason the Cooks' home had termites was "[d]uring construction, [the builder] used dirt that had not been treated for termites to backfill around the basement of the home." Cook, 258 P.3d at 150. BSE argues that the Arizona Court of Appeals applied the economic loss doctrine in the Cook case because the contract at issue had been specifically negotiated and had detailed provisions allocating losses and remedies. BSE seems to be implying that the same is not true here, or that at least the court cannot make such a determination on a motion to dismiss.

BSE also argues that Cook does not apply here because there the court was deciding a motion for summary judgment and here the court is deciding a Rule 12(b)(6) motion. BSE contends that this difference is significant because when there is a question as to whether the economic loss doctrine applies, the "case must be examined to determine whether the facts preponderate in favor of the application of tort law or commercial law exclusively or a combination of the two." Salt River Project Agr. Imp. and Power Dist. v. Westinghouse Elec. Corp., 694 P.2d 198, 210 (Ariz. 1984), abrogated on other grounds by, Phelps v. Firebird Raceway, Inc., 111 P.3d 1003 (Ariz. 2005). "Where economic loss, in the form of repair costs, diminished value, or lost profits, is the plaintiff's only loss, the policies of the law generally will be best served by leaving the parties to their commercial remedies. Where economic loss is accompanied by physical damage to person or other property, however, the parties' interests generally will be realized best by the imposition of strict tort liability." Id. at 209. To determine whether tort claims can co-exist with contract claims, the court considers "1) the nature of the product defect, 2) the manner in which the loss occurred, and 3) the type(s) of loss or damage that resulted." Id. at 210.

Defendants urge this court to follow Evans, 518 F. Supp. 2d at 1145, in which the court declined to extend the economic loss doctrine to "the contractual agreement between a real estate agent and her client...." The Evans plaintiffs alleged that the seller of a self-storage facility and her real estate agent were negligent based on numerous misrepresentations made during the plaintiffs' purchase of the facility. Id. at 1136. The Realty defendants argued that

the "[p]laintiffs [were] not entitled to recover under the law of negligence because [the p]aintiffs ... experienced purely economic losses, and, the Realty Defendants argue[d], in such a situation the economic loss rule precludes recovery in tort and restricts [the p]laintiffs to contract remedies." Id. The court "approache[d] th[e] question" of whether the economic loss doctrine barred the plaintiffs' negligence claims "by observing that Arizona courts have never viewed the economic loss rule broadly, instead they have limited its application to two distinct contexts." Id. at 1145. The court concluded that "[w]hile both parties have made reasonable arguments based upon the somewhat contradictory case law, this Court cannot expand state law based on what amounts to merely a somewhat persuasive argument.... [T]he Court is unconvinced that, given these circumstances, the Arizona high court would greatly expand the purview of the rule beyond the two distinct areas" of products liability and construction defects. Id. at 1147. "Therefore, faced with a line of state precedent encompassing two decades of limited application, the Court adopts Arizona's narrow view of the economic loss rule, and finds that [the p]laintiffs have stated a claim for negligence against the Realty Defendants." Id.

     As Red Equipment is quick to point out, Evans was decided before Cook. Thus, while Evans correctly stated that no Arizona published decision had extended the economic loss doctrine beyond products liability and construction defect cases, that is no longer true. The Cook case applied the doctrine to a contract "for services...." Cook, 258 P.3d at 150 (emphasis added). Like the Cooks, BSE has alleged that Red Equipment was negligent in performing its

contractual promises and BSE has not alleged any personal injury or damage to property other than the alleged damage to the equipment that was to be de-installed and shipped. Like the Cooks, BSE is seeking compensation "for purely economic loss" stemming from an "alleged failure to adequately perform ... promises under" the parties' agreement. Id. at 153. The Cook court held that such claims were barred by the economic loss doctrine and thus, BSE's tort claims are barred by the economic loss doctrine. BSE's tort claims have nothing to do with "the safety of persons and property" which is what tort law is designed to promote, but rather involve "the parties' expectations" which is what contract law is designed to promote. Id. (citing Salt River Project Agric., 694 P.2d at 205–07).

## Conclusion

Red Equipment's motion to dismiss[14] Counts III and IV of BSE's counterclaim is granted. Counts III and IV of BSE's counterclaim are dismissed with prejudice. Red Equipment's request for attorney's fees is denied as premature. The issue of attorney's fees will be taken up when this case is fully resolved.

DATED at Anchorage, Alaska, this 6th day of June, 2014.

/s/ H. Russel Holland
United States District Judge

---

[14] Docket No. 26.