WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RED EQUIPMENT PTE LTD., a Singapore private limited company, | ) ) ) |
| Plaintiff/counterdefendant, | ) ) ) |
| vs. | ) ) |
| BSE TECH, LLC, a Delaware limited liability company; and BOSTON SEMI-EQUIPMENT, LLC, a Delaware limited liability company, | ) ) ) ) |
| | ) No. 2:13-cv-1003-HRH |
| Defendants/counterclaimants. | ) ) |
| _____ | ) |
| BSE TECH, LLC, a Delaware limited liability company; and BOSTON SEMI-EQUIPMENT, LLC, a Delaware limited liability company, | ) ) ) ) ) O R D E R |
| | ) Motion to Dismiss |
| Third-party plaintiffs, | ) ) |
| vs. | ) ) |
| LONE STAR LITHOGRAPHY, LLC, a Texas limited liability company, and OBIE ROOKER, | ) ) ) |
| Third-party defendants. | ) ) |
| _____ | ) |

Third-party defendants move to dismiss the third-party complaint against them.[1] This motion is opposed.[2] Oral argument was requested and has been heard.

---

[1] Docket No. 34.

[2] Docket No. 35.

Facts

Third-party plaintiffs are BSE Tech, LLC and Boston Semi Equipment LLC (hereinafter referred to collectively as "BSE"). Third-party defendants are Obie Rooker and Lone Star Lithography, LLC.

Rooker is alleged to be a resident of Texas "who, upon information and belief, is a managing member and the registered agent for Lone Star. In the alternative, upon information and belief, ... Rooker is the Director of Operations for" plaintiff Red Equipment PTE Ltd.[3] BSE alleges that "[p]ursuant to Rule 19, Lone Star and Rooker are necessary and/or indispensable parties...."[4]

"BSE's ... business involves the aftermarket sale and leasing of used and refurbished semiconductor equipment ('tools') in the United States and abroad."[5] "BSE's transactions regularly require the shipment of tools from one location, such as a semiconductor fabrication plant (commonly known as a 'fab') to the facilities of a buyer, lessee or sub-lessee who will often be the new end-user of the tools...."[6] "[S]hipment is a complex process, and requires multiple steps to occur to ensure that the delivery was performed properly and without

---

[3]First Amended Answer, Counterclaim and Third-Party Complaint [etc.] at 21, ¶ 7, Docket No. 25.

[4]Id. at ¶ 9.

[5]Id. at 22, ¶ 12.

[6]Id.

damage to the tools."[7]  "Typically, tools must be de-installed and affixed with a specialized shipping kit, then crated, prior to shipment."[8]

In January 2013, BSE, through purchase orders and statements of work, entered into an agreement with Red Equipment for the de-installation of certain tools manufactured by Nikon.[9]  Red Equipment was also to affix the specialized shipping kits to the Nikon Tools.[10]  BSE alleges that the "de-installation and shipping kit services for the Nikon Tools were performed by a team comprising, inter alia, and upon information and belief, of R[ed Equipment], Lone Star, and Rooker, acting under the aegis, direction and/or supervision of R[ed Equipment]."[11]

BSE alleges that upon arrival of some of the Nikon Tools in California, it was discovered that "certain Nikon Tools had sustained substantial damage."[12]  More specifically,

---

[7]Id. at ¶ 13.

[8]Id.

[9]Id. at 23, ¶ 16.  Red Equipment has asserted a breach of contract claim against BSE, claiming that BSE owes it $463,804.50 for the work performed under the parties' agreement.  Complaint and Demand for Jury Trial at 17, ¶ 145, Docket No. 1.  BSE has counterclaimed, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, gross negligence, and negligence against Red Equipment.  The gross negligence and negligence counterclaims against Red Equipment have been dismissed.  Docket No. 33.

[10]First Amended Answer, Counterclaim and Third-Party Complaint [etc.] at 23, ¶ 16, Docket No. 25.

[11]Id. at ¶ 17.

[12]Id. at 24, ¶ 20.

BSE alleges that some of the Nikon Tools arrived "with shipping kits and fixture bolts not properly locked in place."[13] BSE further alleges that some of the Nikon Tools that were still in Japan have been uncrated and "a number of deficiencies" have been uncovered.[14] BSE alleges that these deficiencies include screws not being tightened to torque specifications, missing lock washers, missing Avis brackets, and the installation of incorrect bracketing.[15]

BSE asserts two claims against Rooker and Lone Star, a claim for gross negligence (count III) and a claim for negligence (count IV). BSE alleges that Rooker and Lone Star breached "the standard of care in the tool de-installation and shipping kit industry" and that as a result of this breach, BSE has suffered a "loss of revenue, profits, benefits, business opportunities and reputation[.]"[16]

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, Rooker and Lone Star now move to dismiss the claims BSE has asserted against them.

Discussion

"Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'" Zixiang Li v. Kerry, 710 F.3d 995, 998-999 (9th Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 n.

---

[13]Id. at ¶ 22.

[14]Id. at 24-25 ¶ 23.

[15]Id.

[16]Id. at 28, ¶¶ 40 & 44.

3 (2007)). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. at 999 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." Id. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."[17] Id.

As an initial matter, Rooker and Lone Star are not proper third-party defendants. "Fed.R.Civ.P. 14(a) allows a defending party to bring in as a third-party defendant 'a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.' Thus, a third-party claim may be asserted only when the third party's liability

---

[17]BSE contends that because this is a Rule 12(b)(6) motion to dismiss the third-party complaint, the court can only consider the allegations in the Third Party Complaint and cannot consider other pleadings, filings, or submissions in the record. This contention is incorrect. The court can consider other pleadings in this case when deciding the instant motion to dismiss and to the extent that the court has considered any other filings or submissions, these filings or submissions would fall within one of the exceptions to the rule that the court cannot "'consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" United States v. Corinthian Colleges, 655 F.3d 984, 998 (9th Cir. 2011) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001)).

is in some way dependent on the outcome of the main claim and is secondary or derivative thereto." Stewart v. Amer. Int'l Oil & Gas Co., 845 F.2d 196, 199 (9th Cir. 1988). "'The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff. The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough.'" Id. at 200 (quoting 6 Fed. Prac. & Proc. § 1446 at 257 (1971 ed.)).

BSE is not attempting to transfer to Rooker and Lone Star the liability asserted against it by Red Equipment. Rather, BSE is alleging that either Red Equipment is liable for the defective work done in association with the de-installation of the Nikon Tools or that Rooker and Lone Star are liable, or perhaps that Red Equipment is jointly liable with Rooker and Lone Star. BSE should have brought Rooker and Lone Star in as additional parties to its counterclaims against Red Equipment pursuant to Rule 20,[18] rather than as third-party defendants. But instead of dismissing BSE's third-party claims against Rooker and Lone Star based on this technical problem, the court will treat BSE's claims against Rooker and Lone Star as counterclaims and going forward, Rooker and Lone Star shall be re-designated in the caption as counterdefendants, rather than third-party defendants. See Raytheon Aircraft Credit Corp. v. Pal Air Int'l, Inc., 923 F. Supp. 1408, 1413-14 (D. Kan. 1996) (filing of improper cross-claim was remedied by treating it as a third-party pleading under Rule 14 and

---

[18]Contrary to BSE's contention, Rooker and Lone Star are not required or necessary parties and thus Rule 19 has no application here.

re-designating the parties in the caption); <u>Medzilla, Inc. v. SciStaff Services LLC</u>, Case No. C06-506-MJP, 2007 WL 1795602, at *3 (D. Wash. June 20, 2007) (same).

Turning then to the substance of the instant motion, Rooker and Lone Star first argue that BSE has failed to allege sufficient facts in support of its claims. Rooker and Lone Star argue that BSE has done nothing more than allege legal conclusions. But, BSE has adequately alleged its gross negligence and negligence claims. BSE has alleged that Rooker and Lone Star provided services in connection with the de-installation of the Nikon Tools, that these services failed to meet the standards of the semi-conductor industry as evidenced by problems that have been discovered in both California and Japan, and that BSE suffered damages as a result of Rooker's and Lone Star's breach of the duty of care. These allegations are sufficient to put Rooker and Lone Star on notice as to the nature of BSE's claims and the grounds on which these claims rest.

Rooker next argues that BSE's claims against him must be dismissed because he cannot be personally liable for such claims. BSE alleges that Rooker "is a managing member [of] Lone Star."[19] In Arizona, "a member, manager, employee, officer or agent of a limited liability company is not liable, <u>solely</u> by reason of being a member, manager, employee, officer or agent, for the debts, obligations and liabilities of the limited liability company whether arising in contract or tort, under a judgment, decree or order of a court or otherwise." A.R.S. § 29-651

---

[19]First Amended Answer, Counterclaim and Third-Party Complaint [etc.] at 21, ¶ 7, Docket No. 25.

(emphasis added). In addition, "[a] member of a limited liability company, solely by reason of being a member, is not a proper party to proceedings by or against a limited liability company unless the object is to enforce a member's right against or liability to the limited liability company or except as provided in this chapter." A.R.S. § 29-656 (emphasis added). Rooker thus argues that Arizona law prohibits him from being a party to this suit in his personal capacity.

BSE has not, however, alleged that Rooker is solely liable because he was a member of Lone Star. Rather, BSE has alleged that Rooker was personally involved in the alleged negligent acts. Under Arizona law, "a director or officer of a corporation may be held personally liable for the torts of a corporate entity in which the director or officer participates." B2B CFO Partners, LLC v. Kaufman, 856 F. Supp. 2d 1084, 1093 (D. Ariz. 2012); see also, Forsyth v. Four Crown Constr., LLC, No. 1 CA–CV 09–0181, 2010 WL 2403755, at *3–4 (Ariz. Ct. App. June 15, 2010) (sole member of limited liability company may be personally liable for tortious conduct if he personally participates in the alleged conduct). Thus, it is possible that Rooker may be personally liable for the negligence BSE has alleged.[20]

Rooker and Lone Star next argue that BSE's claims are barred by the economic loss doctrine. "The economic loss doctrine prohibits certain tort actions seeking 'pecuniary damage[s] not arising from injury to the plaintiff's person or from physical harm to

---

[20]BSE has also alleged that Lone Star was the "alter ego" of Rooker. First Amended Answer, Counterclaim and Third-Party Complaint [etc.] at 21, ¶ 8, Docket No. 25. However, BSE has failed to allege any factual support for this allegation.

property.'" Sullivan v. Pulte Home Corp., 306 P.3d 1, 2 (Ariz. 2013) (quoting Restatement (Third) of Torts: Liability for Economic Harm § 2 (Tentative Draft No. 1, 2012)). "'Economic loss,' ... refers to pecuniary or commercial damage, including any decreased value or repair costs for a product or property that is itself the subject of a contract between the plaintiff and defendant, and consequential damages such as lost profits." Flagstaff Affordable Housing Ltd. Partnership v. Design Alliance, Inc., 223 P.3d 664, 667 (Ariz. 2010). Here, BSE alleges that its damages include the "loss of revenues, profits, benefits, business opportunities and reputation[.]"[21] Because these are plainly economic damages, Rooker and Lone Star argue that BSE's gross negligence and negligence claims are barred by the economic loss doctrine.

Rooker and Lone Star contend that the harm that BSE has allegedly suffered arises out of its agreements with Red Equipment and that BSE should not be allowed to do an end-run around those agreements by asserting tort claims against Red Equipment's subcontractors. Rooker and Lone Star argue that the economic loss rule can apply here, even though they did not have a contract with BSE, because they were doing the work called for in the contracts between BSE and Red Equipment. In short, Rooker and Lone Star argue that any obligations or duties they had to BSE were created by contract.

Rooker and Lone Star first cite to Corporex Development & Construction Management, Inc. v. Shook, Inc., 835 N.E.2d 701 (Ohio 2005), in support of their argument. There, the issue

---

[21]First Amended Answer, Counterclaim and Third-Party Complaint [etc.] at 28, ¶ 44 & 29, ¶ 50, Docket No. 25.

before the court was "whether the economic-loss rule bars a building project owner from recovery of purely economic damages in tort against a subcontractor, based upon breach of contractually created duties." Id. at 703. "DSI [] contracted with Corporex Constructors, Inc., n.k.a. Corporex Development & Construction Management, Inc., for the construction of a hotel. Corporex, in turn, subcontracted with ... Shook, Inc., for all concrete work related to the hotel." Id. "Following completion of the hotel, DSI and Corporex filed suit against Shook, alleging breach of contract, breach of express warranty, breach of implied warranty, negligence, and failure to perform in a workmanlike manner. DSI and Corporex sought purely economic damages allegedly occasioned by Shook's failure to perform under the subcontract." Id. Although "[t]he economic-loss rule generally prevents recovery in tort of damages for purely economic loss[,]" "DSI argue[d] that the facts of this case fall squarely within an exception to the economic-loss rule outlined in Haddon View, 436 N.E.2d 212." Id. at 704. "In Haddon View, [the court] found that an accountant may be liable for purely economic damages based upon negligent misrepresentation to third parties when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen." Id. (citation omitted). "Because Shook knew the identity of DSI as the project owner, DSI argues, DSI was a third party whose reliance was specifically foreseeable by Shook, and Shook is therefore liable for purely economic damages in tort." Id. The Ohio Supreme Court rejected DSI's argument because "DSI misconstrues [the] holding in Haddon View." Id. "Liability in Haddon View was based exclusively upon [a] discrete, preexisting

duty in tort and not upon any terms of a contract or rights accompanying privity." Id. at 705. Because DSI could not "identify any duty in tort analogous to the duty identified in Haddon View[,]" the court found "[i]ts reliance on Haddon View ... misplaced." Id. The court further explained that

> [b]ecause the underlying duties are created by a contract to which DSI is not a party, no tort action lies in DSI's favor. Instead, DSI, the project owner, retains its right to file a breach-of-contract claim against Corporex, the contractor, for damages permitted under its contract, and Corporex may, in turn, recover any damages against Shook, the subcontractor, permitted by the subcontract. DSI may not, however, recover in tort when Shook has no duty in tort to protect DSI from purely economic damages. We will not adopt a rule that ignores basic tort law and thwarts the intentions of parties to a contract, who must be allowed to bargain freely to allocate the risks attendant to their undertaking, including the possibility of purely economic damages.

Id.

Rooker and Lone Star also cite to Village at White Birch Town Homeowners Ass'n v. Goodman Associates, Inc., Case No. 11–1842, 2012 WL 5356045 (Iowa Ct. App. Oct. 31, 2012). There, White Birch asserted a negligence claim against three subcontractors. Id. at *1. "White Birch argue[d] the theory behind the economic loss doctrine's limitation on recovery for negligence is based in contract. The association reason[ed] that because it did not enter into an agreement with the subcontractors, it should be able to recover from them under a negligence claim." Id. at *4. The court rejected that argument because the Iowa Supreme Court "recently declined to allow a claim in tort where a company entered into a contract with

a second party, who in turn contracted with a third. The court concluded the lack of contractual privity between the first company and the third company did not defeat application of the economic loss doctrine." Id. at *5.

However, the Arizona Supreme Court has declined to extend the economic loss doctrine to non-contracting parties. Sullivan, 306 P.3d at 3. Because BSE did not have a contract with Rooker and Lone Star, the economic loss doctrine has no application here. In the absence of a contract, the court "'should instead focus on whether the applicable substantive law allows liability in the particular context.'" Id. (quoting Flagstaff Affordable Housing, 223 P.3d at 671).

"Generally, a cause of action for negligence arises from a duty, a determination that a person is required to conform to a particular standard of conduct." Lips v. Scottsdale Healthcare Corp., 229 P.3d 1008, 1010 (Ariz. 2010). "Whether a duty exists is a matter of law for the court to decide." Id. "'Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant,' and from public policy considerations." Id. (quoting Gipson v. Kasey, 150 P.3d 228, 232 (Ariz. 2007)). "For example, the common law imposes a duty of reasonable care on a party who voluntarily undertakes to protect persons or property from physical harm." Id. However, "[c]ourts have not recognized a general duty to exercise reasonable care for the purely economic well-being of others, as distinguished from their physical safety or the physical safety of their property." Id.

BSE has alleged that Rooker and Lone Star owed it a professional duty of care. Although "[a]s a matter of public policy, attorneys, accountants and other professionals owe special duties to their clients, and breaches of those duties are generally recognized as torts", Barmat v. John and Jane Doe Partners A-D, 747 P.2d 1218, 1222 (Ariz. 1987), Rooker and Lone Star argue that there is no professional duty of care imposed on subcontractors in the semi-conductor testing industry.

In Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co., 682 P.2d 388, 403 (Ariz. 1984), the court explained that "[t]he principle involved" in professional negligence claims "is simply that a person who holds himself out to the public as possessing special knowledge, skill or expertise must perform his activities according to the standard of his profession.  If he does not, he may be held liable under ordinary tort principles of negligence for the damage he causes by his failure to adhere to the standard."  Arizona has applied this principle to professionals other than lawyers, accountants, and doctors.  See Wilks v. Manobianco, 330 P.3d 1003, 1005 (Ariz. Ct. App. 2014) (insurance agent); Ponce v. Parker Fire Dist., 322 P.3d 197, 201 (Ariz. Ct. App. 2014) (firefighters); Joseph Painting Co., Inc. v. Larson Engineering, Inc., Case No. 1 CA-CV 09-0327, 2010 WL 746173, at *2-3 (Ariz. Ct. App. March 4, 2010) (engineer); Hunter Contracting Co., Inc. v. Superior Court In and For County of Maricopa, 947 P.2d 892, 894-95 (Ariz. Ct. App. 1997) (contractor); Ram Head Outfitters, Ltd. v. Mecham, Case No. CV 09–1382–PHX–MHM, 2011 WL 1429623, at *17 (D. Ariz. April 14, 2011) (airplane mechanic); Porter v. Ariz. Dep't of Corrections, Case No. 2:09–cv–2479–HRH,

2012 WL 7180482, at *4 (D. Ariz. Sept. 12, 2012) (correctional officers). Thus, it is plausible that Rooker and Lone Star owed BSE a professional duty of care. Because Rooker and Lone Star may have owed a professional duty of care to BSE, BSE's tort claims against them are not subject to dismissal.

## Conclusion

Rooker and Lone Star's motion to dismiss[22] is denied. As discussed above, going forward, Rooker and Lone Star will be re-designated in the caption of this case as counterdefendants, rather than third-party defendants.

DATED at Anchorage, Alaska, this 18th day of September, 2014.

/s/ H. Russel Holland
United States District Judge

---

[22]Docket No. 34.