WO                    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

RED EQUIPMENT PTE LTD., a Singapore )
private limited company, )
                                    )
            Plaintiff/counterdefendant, )
                                    )
vs.                                 )
                                    )
BSE TECH, LLC, a Delaware limited liability )
company; and BOSTON SEMI-EQUIPMENT, )
LLC, a Delaware limited liability company, )
                                    )      No. 2:13-cv-1003-HRH
            Defendants/counterclaimants. )
_____ )
BSE TECH, LLC, a Delaware limited liability )
company; and BOSTON SEMI-EQUIPMENT, )      O R D E R
LLC, a Delaware limited liability company, )
                                    )      Motion for Summary Judgment;
            Third-party plaintiffs, )      Motion in Limine; Motion for
                                    )      Sanctions
vs.                                 )
                                    )
LONE STAR LITHOGRAPHY, LLC, a Texas )
limited liability company, and OBIE ROOKER, )
                                    )
            Third-party defendants. )
_____ )

Plaintiff and counterdefendants move for summary judgment on defendants'

counterclaims.[1]  This motion is opposed.[2]   Plaintiff and counterdefendants also move to

_____

[1]Docket No. 120.

[2]Docket No. 124.

exclude the testimony of John Kleman.[3]  This motion is opposed.[4]  And, plaintiff moves for sanctions.[5]  This motion is opposed.[6]  Oral argument was requested and has been heard on all three pending motions.

Facts

Plaintiff/counterdefendant is Red Equipment Pte Ltd.  Lone Star Lithography, LLC and Obie Rooker are also counterdefendants.  Defendants/counterclaimants are BSE Tech, LLC and Boston Semi-Equipment, LLC (referred to herein collectively as "BSE").

Plaintiff "is in the business of ... deinstalling certain used semiconductor equipment" and selling "shipping kits for certain used semiconductor equipment."[7]  BSE is in the business of selling and leasing "used and refurbished semiconductor equipment ('tools') in the United States and abroad."[8]

"In or about January 2013," BSE and Red Equipment "entered into an agreement through purchase orders and statements of work whereby [Red Equipment] was

---

[3]Docket No. 131.

[4]Docket No. 132.

[5]Docket No. 126.

[6]Docket No. 128.

[7]Complaint and Demand for Jury Trial at 2, ¶¶ 8-9, Docket No. 1

[8]First Amended Answer, Counterclaim, and Third-Party Complaint of Boston Semi Equipment, LLC and BSE Tech, LLC at 22, ¶ 12, Docket No. 25.

responsible for de-installing certain of the tools manufactured by Nikon..., and for providing and affixing specialized shipping kits for the Nikon Tools ... in preparation for their extraction from" a fabrication plant in Tateyama, Japan "and subsequent shipping to customers...."[9]   Rooker avers that he and four other subcontractors were hired by Red Equipment to perform the de-installation work and to affix the shipping kits.[10]   The other four subcontractors were John Kleman, Gal Dery, Norikazu Okiji, and Miguel Sanchez.[11]

BSE alleges that some of the Nikon tools were shipped to California, where upon arrival, it was discovered that some of them "had sustained substantial damage."[12]   BSE alleges that after it discovered this damage in California, it de-crated and inspected some of the Nikon tools that were still in Japan and "a number of deficiencies" were uncovered.[13] BSE contends that Red Equipment, Rooker, and Lone Star were responsible for the damage and deficiencies.   Red Equipment, Rooker, and Lone Star dispute that they were responsible for any damage to the Nikon tools or any deficiencies in the crating of the Nikon tools.

---

[9]Id. at 23, ¶ 16.

[10]Declaration of Obie Rooker at 2, ¶¶ 2-3, Exhibit 1, Plaintiff's/Counter-Defendant's Motion for Summary Judgment re Damages, Docket No. 121.

[11]Id. at ¶ 3.

[12]First Amended Answer, Counterclaim, and Third-Party Complaint of Boston Semi Equipment, LLC and BSE Tech at 24, ¶ 20, Docket No. 25.

[13]Id. at ¶ 23.

On May 14, 2013, Red Equipment commenced this action, in which it asserts a breach of contract claim against BSE, claiming that BSE owes it $463,804.50 for the work that Red Equipment performed under the parties' agreement.[14]   BSE has counterclaimed, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, gross negligence, and negligence against Red Equipment, and negligence and gross negligence claims against Rooker and Lone Star.

Red Equipment, Rooker, and Lone Star (referred to collectively from here on out as Red Equipment) now move for summary judgment on BSE's counterclaims on the theory that BSE cannot prove damages.  Red Equipment also moves to exclude the testimony of John Kleman and to strike the declarations of Kent Shoot.  And, plaintiff moves for sanctions for BSE's alleged discovery violations.

## Motion for Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to show that there is an absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In

---

[14]Complaint and Demand for Jury Trial at 17, ¶ 145, Docket No. 1.

deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor.  Id. at 255.  "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence."  T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

Although the facts may be disputed as to who was responsible for the damage to the Nikon tools or even whether the Nikon tools were in fact damaged, Red Equipment argues that it is still entitled to summary judgment on BSE's counterclaims because BSE has no evidence as to the damages it suffered as a result of the alleged faulty work. Damages are an essential element of each of BSE's counterclaims.

Red Equipment's argument is based on the deposition testimony of Bryan Banish. Banish was BSE's Rule 30(b)(6) deponent on certain topics, including the facts related to BSE's claims against Red Equipment, which would include the damages that BSE suffered as a result of Red Equipment's alleged faulty work.

Banish testified that Telefunken purchased the Nikon tools in question and paid BSE in full for the tools.[15]  Banish, however, testified that BSE had been damaged because of

---

[15]Rule 30(b)(6) Deposition of BSE Tech, LLC and Boston Semi Equipment, LLC by
(continued...)

> the additional costs incurred associated with having to fly people around the world to conduct ... inspections, paid to have all of the fixtures redone, and there were significant concerns in the April-to-August time frame that, as news of this stuff was getting out, that may have been affecting sales....[16]

Banish also mentioned that BSE incurred additional storage costs.[17]

But, Banish was not able to quantify these damages. As for travel costs, Banish testified that BSE incurred "many hundreds of thousands of dollars" to fly employees and others around the world to fix the problems with the Nikon tools.[18] Banish further testified that Kent Shoot, who is BSE's former CFO and Vice President of Finance, "has been tracking costs, internal costs" and "[i]t wouldn't be appropriate for [him (Banish)] to try to estimate" those costs.[19] As for any lost sales or profits, Banish testified that BSE was "still trying to assess how well we can document" that sales which did not go through "were attributable" to the problem with the Nikon tools.[20] Banish could not "recall" the names

---

[15](...continued)
and through Bryan Banish at 344:23-345:6, Exhibit 2, Plaintiff's/Counter-Defendant's Motion for Summary Judgment re Damages, Docket No. 120.

[16]Id. at 348:3-11.

[17]Id. at 366:2-3.

[18]Id. at 350:23-351:6.

[19]Id. at 354:15-21.

[20]Id. at 362:14-16.

of any customers whose purchases were lost during the relevant time frame.[21]  As for the

additional storage costs, Banish testified that he believed that Shoot was quantifying those

damages.[22]  As for the repair work that BSE had to contract others to do, Banish similarly

testified that Shoot was quantifying those damages.[23]

Shoot was BSE's Rule 30(b)(6) deponent on "[f]acts relating to the availability of

insurance for the losses allegedly sustained as a result of damages to any tool de-installed

by Plaintiff at the Fab."[24]  At his deposition, Shoot testified that BSE made a claim under a

Chubb insurance policy[25] for approximately $517,000, of which Chubb covered $249,000

minus a $5,000 deductible.[26]  Shoot testified that there were three components to the Chubb

claim: 1) "direct costs paid to third-party vendors", 2) "travel costs", and 3) "internal labor

---

[21]Id. at 362:23-363:12.

[22]Id. at 366:5-9.

[23]Id. at 366:25-367:5.

[24]Reply Memorandum at 8, Docket No. 87.

[25]Plaintiff contends that BSE never produced the Chubb insurance policy even though in its first Requests for Productions plaintiff requested that BSE produce "[a]ll insurance polices held by, purchased by or naming BSE as an insured that were in effect while the Nikon tools were de-installed and/or crated and/or shipped and/or held in transit that BSE believes may possibly provide coverage for the alleged damage to the Nikon tools shipped to California...."  Exhibit 1 at 4, ¶ 17, Motion for Sanctions [etc.], Docket No. 126.

[26]30(b)(6) Deposition of BSE Tech, LLC and Boston Semi Equipment LLC (Kent Shoot) at 81:5-82:15, Exhibit 2, Memorandum of Defendants' ... in Opposition to Motion for Summary Judgment re: Damages [etc.], Docket No. 124.  Plaintiff contends that BSE never produced any evidence of the $244,000 payment from Chubb.

costs...”[27]   Shoot testified that the "spreadsheet analysis" in Exhibit 95 was how the information was provided to Chubb.[28]   Exhibit 95 consists of 124 pages and includes, among other things, spreadsheets, invoices, incomplete printouts, blank pages, and pages written in Japanese.

BSE contends that Exhibit 95 itself shows that BSE incurred damages as a result of Red Equipment's faulty work, and BSE offers the declaration of Shoot to explain Exhibit 95.  Shoot avers that Exhibit 95 was his "damages analysis" which he completed "a number of days before I was deposed on September 11, 2015...."[29]  Shoot avers that "Exhibit No. 95 ... is the work product of Gerald Martinez and me.  It demonstrates that ... [BSE] suffered out-of-pocket damages totaling $517,211.19 ... from the actions, omissions, breach of contract, poor workmanship, and negligence" of Red Equipment "with respect to the de-installation and extraction of the Nikon tools from the UMCJ facility in Tateyama, Japan...."[30]   Shoot avers that he summarized the out-of-pocket damages into three categories:  vendor expenses, travel and related expenses, and labor expenses.[31]  Shoot

[27]Id. at 78:10-18.

[28]Id. at 78:21-24.

[29]Declaration of Kent Shoot [etc.] at 2, ¶ 4, Exhibit 1, Memorandum ... in Opposition to Motion for Summary Judgment re Damages [etc.], Docket No. 124.

[30]Id. at 3, ¶ 5.

[31]Id. at 3-4, ¶ 6.

-8-

explains that vendor expenses are "the direct ... payments ... to third-parties and vendors, as required to inspect, repair and remediate the Nikon tools ... in Roseville, California ... and in Narita, Japan[.]"[32]  He explains that travel and related expenses included "airfare, automobile rentals, hotels, meals and other related charges" for "BSE employees to fly to Japan, California and elsewhere, as required to inspect, repair and remediate the Nikon tools...."[33]  And, he explains that labor expenses were the payments BSE made to its own employees "as required to travel (domestically and internationally) to manage the strained relationship with the customer that purchased the Nikon tools and inspect, repair and remediate the Nikon tools...."[34]  Shoot avers that BSE incurred $315,016.05 in vendor expenses; $80,941.40 in travel costs, and $121,253.74 in labor expenses.[35]

Red Equipment argues that Shoot's declaration should be stricken because it is a sham declaration.  "At the summary judgment phase, credibility determinations and the weighing of evidence are not functions of the court."  Hennighan v. Insphere Insurance Solutions, Inc., 38 F. Supp. 3d 1083, 1096 (N.D. Cal. 2014).  "Nonetheless, '[t]he general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradict-

---

[32]Id. at 3, ¶ 6(a).

[33]Id. at 3-4, ¶ 6(b).

[34]Id. at 4, ¶ 6(c)

[35]Id. at ¶ 7.

ing his prior deposition testimony.'" <u>Id.</u> (quoting <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th Cir. 1991)).  "The sham declaration rule only applies if 'the inconsistency between a party's deposition testimony and subsequent affidavit [is] clear and unambiguous.'"  <u>Cooper v. United Air Lines, Inc.</u>, 82 F. Supp. 3d 1084, 1096-97 (N.D. Cal. 2015) (quoting <u>Van Asdale v. Int'l Game Tech.</u>, 577 F.3d 989, 998–99 (9th Cir. 2009)).

Red Equipment argues that there are a number of inconsistencies between Shoot's deposition testimony and his declaration, but this argument fails.  At his deposition, Shoot testified that  that he did not believe that the insurance claim and Exhibit 95 were the same document,[36] but this statement does not conflict with his averments in his declaration. Shoot avers that Exhibit 95 was finalized "a number of days" before his September 11, 2015 deposition which means it could not be the exact same document that was provided to Chubb.   At his deposition, Shoot testified that Exhibit 95 "was primarily prepared by Gerald Martinez; however, I worked closely with him in its preparation."[37]   In his declaration, Shoot avers that Exhibit 95 "is the work product of Gerald Martinez and me,"[38] which does not necessarily contradict what he said at his deposition.  At his deposition,

---

[36]Shoot Deposition at 86:11-17, Exhibit 4, Motion for Sanctions [etc.], Docket No. 126.

[37]Shoot Deposition at 79:16-18, Exhibit 2, Memorandum of Defendants ... in Opposition to Motion for Summary Judgment re: Damages [etc.], Docket No. 124.

[38]Shoot Declaration at 3, ¶ 5, Exhibit 1, Memorandum of Defendants ... in Opposition to Motion for Summary Judgment re: Damages [etc.], Docket No. 124.

Shoot testified that the first time he saw Exhibit 95 in its current form was at his deposition,[39] which does not contradict his declaration in which he avers that he "finalized" the exhibit a number of days prior to his deposition.  It is possible that Shoot "finalized" Exhibit 95 by pulling together the documents that would be included in that exhibit but that he never saw the exhibit as whole until his deposition. Because there are not clear and unambiguous inconsistencies between Shoot's declaration and his deposition testimony, his declaration is not a sham.

But despite Shoot's explanation of Exhibit 95 in his declaration, BSE cannot rely on Exhibit 95 to defeat Red Equipment's motion for summary judgment.  "A trial court can only consider admissible evidence in ruling on a motion for summary judgment.  Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).  Exhibit 95 is inadmissible because it was not timely disclosed.

"Rule 26(a)(1)(A)(iii) requires the disclosure of 'a computation of each category of damages claimed by the disclosing party.'"  Hoffman v. Construction Protective Services, Inc., 541 F.3d 1175, 1179 (9th Cir. 2008).  "Rule 26(e)(1)(A) requires disclosing parties to supplement their prior disclosures 'in a timely manner' when the prior response is 'incomplete or incorrect.'"  Id.  "'Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is

---

[39]Shoot Deposition at 87:6-15, Exhibit 4, Motion for Sanctions [etc.], Docket No. 126.

not properly disclosed." Id. (quoting Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259

F.3d 1101, 1106 (9th Cir. 2001)). "Under Rule 37, exclusion of evidence not disclosed is

appropriate unless the failure to disclose was substantially justified or harmless." Id.

If Exhibit 95 is BSE's computation of damages as BSE contends, then Exhibit 95

should have been disclosed long before September 9, 2015. Shoot testified that there were

"numerous iterations of" Exhibit 95 and that the information was provided to Chubb on

more than one occasion, and that "there certainly would have been versions of this

document that were presented to [Chubb] in 2014."[40] If some version of Exhibit 95 existed

in 2014, which plainly it did, BSE had an affirmative duty to disclose it to Red Equipment

then, rather than waiting until September 9, 2015 to disclose it.  BSE has offered no

justification for waiting until September 9, 2015 to disclose its damages computation.  And,

BSE's late disclosure was not harmless.  While Exhibit 95 was disclosed prior to the close

of discovery, it was only disclosed two business days prior to the close of discovery.  BSE's

late "disclosure of damages would have most likely required the court to create a new

briefing schedule and perhaps re-open discovery.... Such modifications to the court's and

the parties' schedules supports a finding that the [untimely disclosure] was not harmless."

Id. at 1180.  In short, BSE's disclosure of Exhibit 95, which is BSE's damages computation,

was untimely, and the untimely disclosure was not substantially justified or harmless.

_____

[40]Shoot Deposition at 79:21-80:2, Exhibit 2, Memorandum ... in Opposition to Motion
for Summary Judgment re: Damages [etc.], Docket No. 124.

Thus, Exhibit 95 is excluded.

Without Exhibit 95, BSE has no evidence to establish the damages it is claiming. Although BSE also relies on the testimony of James Vogel and John Kleman,[41] their testimony does not help BSE here. Vogel testified about the actual damage to the Nikon tools,[42] but Vogel did not testify about the damages that BSE suffered as a result of the alleged faulty de-installation of the tools. Similarly, Kleman testified about whether the Nikon tools were actually damaged.[43] But, the issue here is whether BSE can quantify the damages it allegedly suffered, not whether the Nikon tools were in fact damaged.

Banish testified that Shoot was the witness who could quantify BSE's damages. But Shoot cannot testify about BSE's damages if he has no underlying support for his testimony. The underlying support for BSE's damages are the documents in Exhibit 95. But, Exhibit 95 has been excluded. To permit Shoot to testify about BSE's damages, either in opposition to the instant motion for summary judgment or at a trial, when Exhibit 95 has been excluded, would render the Rule 26 disclosure requirement meaningless.

---

[41]Red Equipment moves to exclude the testimony of Kleman. That motion is discussed below in detail. For purposes of the motion for summary judgment, the court assumes that Kleman can testify in this matter.

[42]Deposition of James Vogel at 260:11-262:6, Exhibit 5, Memorandum of Defendants ... in Opposition to Motion for Summary Judgment re: Damages [etc.], Docket No. 124.

[43]Deposition of John Kleman at 51:13-52:20 & 57:25-58:18, Exhibit 6, Memorandum of Defendants ... in Opposition to Motion for Summary Judgment re: Damages [etc.], Docket No. 124.

Without Exhibit 95 and Shoot's testimony explaining Exhibit 95, BSE has no evidence of damages, which are an essential element of each of BSE's counterclaims. Without evidence of any damages flowing from Red Equipment's alleged faulty work, no reasonable jury could find for BSE on its counterclaims. Thus, Red Equipment is entitled to summary judgment on BSE's counterclaims.

<u>Motion in Limine</u>

Red Equipment moves to exclude John Kleman's testimony on the grounds that BSE failed to properly notice Kleman's deposition and failed to obtain permission to take the deposition by remote means. On September 1, 2015, the court granted BSE's motion for leave to use alternative service of a subpoena upon Kleman.[44] The order provided that the "time and place" for Kleman's deposition were to be chosen by BSE.[45] But, the order appeared to contemplate that the deposition would either take place in Phoenix, where Red Equipment's counsel is located, or in a location to which Red Equipment's counsel would have to travel.[46] On September 2, 2015, BSE noticed Kleman's deposition "**by a remote means, by video-conferencing[,]**" on Friday, September 4, 2015 at 10:30 a.m. CST (8:30

---

[44]Order re Motion for Leave to Use Alternative Service of Subpoena [etc.] at 3, Docket No. 122.

[45]<u>Id.</u> at 2.

[46]<u>Id.</u>

MST).[47]  Red Equipment's counsel objected to the notice, advising BSE that she would not be attending because, as defense counsel was aware, she was in the middle of an arbitration hearing and because the deposition had been improperly noticed.[48]  Despite Red Equipment's counsel's objection, BSE's counsel took Kleman's deposition on September 4, 2015 via video-conferencing.

Red Equipment first argues that Kleman's testimony must be excluded because it was improper for BSE to take the deposition by remote means.  Rule 30(b)(4), Federal Rules of Civil Procedure, provides that "[t]he parties may stipulate--or the court may on motion order--that a deposition be taken by telephone or other remote means."  Although BSE does not expressly so argue, it seems to imply that because the court permitted it to determine the "place" of Kleman's deposition, the court had authorized a deposition by remote means.  But BSE reads too much into the court's order.  The court did not authorize the use of remote means for taking Kleman's deposition.  The parties also did not stipulate to the use of remote means.  Thus, BSE failed to comply with Rule 30(b)(4).

---

[47]Defendants ... Re-Notice, by Remote Means, of Deposition of John Kleman by Video-Conference at 1-2, Exhibit 1, Plaintiff's/Counterdefendants' Motion in Limine [etc.], Docket No. 131 (emphasis in original).  The time of the deposition was changed the next day to 9:30 a.m. CST (7:30 a.m. MST).  Defendants ... Second Re-Notice, by Remote Means, of Deposition of John Kleman by Video-Conference, Exhibit 4, Plaintiff's/Counter-defendants' Motion in Limine [etc.], Docket No. 131.

[48]Email from Julianne Wheeler to Siobhan Tolan and others, Exhibit 3, Plaintiff's/Counterdefendants' Motion in Limine [etc.], Docket No. 131.

"The inherent powers of federal courts are those which 'are necessary to the exercise of all others,' and include 'the well-acknowledged inherent power ... to levy sanctions in response to abusive litigation practices.'" <u>Fjelstad v. American Honda Motor Co.</u>, 762 F.2d 1334, 1338 (9th Cir. 1985) (quoting <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 764–65 (1980)).  Pursuant to its inherent power, the court will exclude Kleman's testimony. Because the court is excluding Kleman's testimony for BSE's failure to comply with Rule 30(b)(4), the court need not consider Red Equipment's argument that Kleman's deposition was not properly noticed.

<u>Motion for Sanctions</u>

Plaintiff moves for sanctions for BSE's discovery violations.  Plaintiff argues that BSE had a duty to supplement its discovery responses concerning insurance but that it failed to do so.  Plaintiff argues that BSE failed to produce the Chubb insurance policy and another insurance policy, failed to produce the iterations of BSE's Chubb claim, and failed to produce documents related to its communications with Chubb.  Rule 37(c)(1), Federal Rules of Civil Procedure, provides, in pertinent part, that

> "[i]f a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including

-16-

attorney's fees, caused by the failure[.]

Plaintiff argues that BSE's failure to produce the insurance-related documents was not substantially justified, but rather that BSE was concealing this information because it knew that it had no damages.  Thus, plaintiff seeks as a sanction the cost it incurred in filing its motion for sanctions and the cost its counsel incurred in preparing and taking the depositions of Shoot and Banish, neither of whom plaintiff contends were prepared to testify about the subjects for which they were designated.  Plaintiff contends that Banish was designated as the person who could testify about BSE's damages but as set out above, he repeatedly testified that Shoot would be the one who could quantify damages.  And, plaintiff contends that Shoot could not testify about Exhibit 95 because he had never seen the exhibit until his deposition and did not know what was included in the exhibit.

Plaintiff also seeks to strike Kent Shoot's September 21, 2015 declaration and to preclude BSE from relying on Exhibit 95.  Those issues are addressed in detail above.  And, plaintiff seeks to strike the October 26, 2015 declaration of Kent Shoot which BSE offered in support of its opposition to the motion for sanctions.[49]  Plaintiff argues that this Shoot declaration should be stricken from the record because it contains legal argument, testimony about his review of the Motion for Sanctions, and his disagreement with opposing counsel's characterizations of his testimony.

---

[49]Exhibit 7, Docket No. 128.

-17-

Plaintiff's motion for sanctions is denied.  The motion is moot as to whether to exclude Exhibit 95 and strike Shoot's September 21, 2015 declaration because the court has already decided those issues.  Plaintiff is not entitled to recover the costs of deposing Banish and Shoot.  The court is not convinced that BSE's failure to produce insurance-related documents had much to do with Banish's and Shoot's testimony, or lack thereof, as to the quantification of BSE's damages.  And, there is no reason to strike Shoot's October 26, 2015 declaration.  To the extent that the court has considered this declaration, it has only considered those portions of the declaration that are based on Shoot's personal knowledge. It has not considered those portions of the declaration that contain legal argument and other improper matter.

Conclusion

Red Equipment's motion for summary judgment[50] is granted.  BSE's counterclaims are dismissed.  Red Equipment's motion in limine[51] is granted.  John Kleman is precluded from testifying in this matter.  Plaintiff's motion for sanctions[52] is denied.

DATED at Anchorage, Alaska, this 23rd day of March, 2016.

/s/ H. Russel Holland
United States District Judge

---

[50]Docket No. 120.

[51]Docket No. 131.

[52]Docket No. 126.